**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


**CARETOLIVE,**

        **Plaintiff,**                  **Case No. 2:07-cv-729**
                                      **JUDGE GREGORY L. FROST**
        **v.**                         **Magistrate Judge Norah McCann King**

**ANDREW von ESCHENBACH, et al.,**

        **Defendants.**


**OPINION AND ORDER**

This matter came on for consideration of the unopposed Motion of Non-Party Paul Goldberg for Sanctions Against Plaintiff CareToLive, Pursuant to Civil Rule 45(c)(1) ("Goldberg's Motion for Sanctions").  (Doc. # 66.)  For the reasons that follow, the Court **GRANTS IN PART and DENIES IN PART** that motion.

**I.  Background**

Non-party Goldberg is an award-winning journalist who, with his wife Kristen Goldberg, edits and publishes *The Cancer Letter*.  On August 2, 2007 the Goldbergs, who live in Washington, D.C., received by facsimile two subpoenas[1] issued by Plaintiff in the instant action, seeking certain confidential source materials, and a physical inspection of their home offices by Plaintiff's counsel, Kerry Donahue.

On August 3, 2007 Donahue emailed Goldberg informing him that Donahue intended to have the subpoenas hand served and that "if we do not resolve the issue very soon then I shall

_____

[1]All of the documents referred to herein are filed as exhibits to Goldberg's Motion for Sanctions.  (Doc. # 66.)

make flight reservations and shall be at your office at 10:30 a.m. on August 13, 2007." Donahue further stated that he would bring a computer expert with him.

On August 5, 2007 Goldberg and his wife left Washington D.C. on a long-planned vacation, (*i.e.*, the vacation had been planned long before Goldberg received the subpoenas at issue here). Later that same day, a process server attempted to serve Goldberg at his home but was informed by Goldberg's seventeen year old daughter that he was on vacation.

On August 5, 2007 Donahue sent an email to Goldberg asking "why are you fighting this so hard" and indicating again that he was coming "to search your business" on August 13, 2007 and that "there will be cameras there." Donahue sent a second email that day, accusing Goldberg of having his daughter lie for him and threatening that the process server would be "knocking on your door all night."

On August 6, 2007, the first business day after Plaintiff attempted to serve the subpoenas, *The Cancer Letter's* counsel, Steven Lieberman, wrote to Donahue informing him, *inter alia*, that the Goldbergs were away on vacation and after they returned the parties could discuss accepting service. In response, Donahue left a voice mail message with Lieberman admitting that Goldberg had not yet been properly served and accused Goldberg of "hiding out in his basement trying to avoid federal subpoenas." Donahue also again threatened[2] that he would be in Washington D.C. on August 13, 2007 and that "there will be a lot of press people right behind me."

On August 8, 2007 Plaintiff filed a 22 page document titled "Petition to Enforce

---

[2]Goldberg contends that the threats to appear at his home on August 13, 2007 were of particular concern because his daughter was home alone and Donahue had previously been convicted of criminal trespass, a conviction that was upheld on appeal.

Subpoena" in the United States District Court for the District of Columbia.  Plaintiff requested

that court to enforce the subpoenas at issue here.

On August 10, 2007 Goldberg's counsel responded to Donahue's voicemail message

indicating, again, that the Goldbergs were out of town on vacation.  Lieberman also suggested

that Donahue familiarize himself and comply with Fed. R. Civ. P. 45 because the subpoenas

were facially invalid.  Further, Lieberman indicated that Donahue's postings to the internet

suggested that the subpoenas were simply a publicity stunt and that he "may wish to consider the

effect of Fed. R. Civ. P. 45(c)(1)."  Finally, he indicated that if the Clerk in the District of

Columbia accepted his Petition to Enforce Subpoena "and we are required to prepare a response,

we will seek attorneys' fees on behalf of the Goldbergs and *The Cancer Letter*."  In response,

Donahue sent an email indicating that if he did not get the information requested in the

subpoenas, he could "depose [Goldberg] and subpoena him to all the hearings" and that

Goldberg was "going to force us to make him a party to this litigation."

On August 10, 2007 the Goldbergs and *The Cancer Letter* served Donahue with Rule 45

objections.

On August 14, 2007 Donahue sent Lieberman an email claiming that because Goldberg

and *The Cancer Letter* had been so uncooperative, he had "decided I need to take both their

depositions" and after that "we shall decide whether to amend our complaint to add them as

Defendants."  In another email sent that same day, Donahue indicated that he considered

Goldberg and *The Cancer Letter* to be in contempt of court and opined that because "the

subpoena requested documents to be produced in Ohio, Mr. Goldberg would need to appear in

Ohio to show cause."

On August 22, 2007 Goldberg and *The Cancer Letter* opposed Plaintiff's Petition to

Enforce Subpoenas.  On November 5, 2007 the District of Columbia District Court issued an

Order denying Plaintiff's Petition to Enforce Subpoena because the subpoenas were "facially

invalid."  Further, that court indicated that Plaintiff's conduct was "sanctionable," citing to Fed.

R. Civ. P. 45(c)(1), which the court explained "provides that the Court on behalf of which the

subpoena was issued shall impose the appropriate sanction, which may include reasonable

attorneys' fees."  Moreover, the Court specifically stated that the "denial is without prejudice to

any motion for sanctions that Goldberg may file in Ohio."

On November 26, 2007 non-party Paul Goldberg filed Goldberg's Motion for Sanctions.

(Doc. # 66.)  This Court scheduled a non-oral hearing on January 18, 2008 for that motion.

(Doc. # 67).

On January 22, 2008 this Court issued an Opinion and Order which granted Defendants

summary judgment in this case.  (Doc. # 69) (that decision in currently on appeal before the

Sixth Circuit).  In that Opinion and Order the Court specifically informed the parties that it

would retain jurisdiction to decide Goldberg's Motion for Sanctions.  *Id.* at 28 ( "the Court

retains jurisdiction over the pending motion for sanctions").  *See also Phelan v. Bell*, 8 F.3d 369,

372 (6th Cir. 1993) (explaining that the United States Court of Appeals for the Sixth Circuit has

consistently held that the trial court is in the best position to decide certain collateral matters

such as sanctions, attorneys' fees and costs, even while divested of jurisdiction over the

substantive matters in a case).

Plaintiff failed to respond to Goldberg's Motion for Sanctions.  On January 16, 2008

Plaintiff filed a motion to dismiss Goldberg's motion for lack of jurisdiction.  (Doc. # 73.)  This

Court denied that motion on January 22, 2008.  (Doc. # 74.)  In its Opinion and Order, the Court

indicated that it had unequivocally retained jurisdiction to decide Goldberg's Motion for

Sanctions.  *Id.* at 1.  Further, the Court articulated that the motion remained unopposed by

Plaintiff and that Plaintiff had "submit[ed] no reason why this Court should extend the deadline

date [to respond] which has already passed."  *Id.* at 2.  Plaintiff has not filed anything since the

issuance of that Opinion and Order.

## II.  Standard

Goldberg moves for sanctions under Fed. R. Civ. P. 45(c)(1), which provides:

(c) Protecting a Person Subject to a Subpoena.

   (1) Avoiding Undue Burden or Expense; Sanctions.  A party or attorney
responsible for issuing and serving a subpoena must take reasonable steps to
avoid imposing undue burden or expense on a person subject to the subpoena.
The issuing court must enforce this duty and impose an appropriate
sanction--which may include lost earnings and reasonable attorney's fees--on a
party or attorney who fails to comply.

According to the 1991 Advisory Committee Notes, Rule 45's sanctions provision was

intended primarily to protect "a non-party witness as a result of a misuse of the subpoena."  Fed.

R. Civ. P. 45(c)(1) advisory committee's note (1991).

## III.  Analysis

Rule 45 makes clear the obligation of parties to respect the rights of third parties and that

a party should avoid using the subpoena process to impose undue burden or expense.  Fed. R.

Civ. P. 45(c)(1).  Goldberg argues, and this Court agrees, that Donahue has completely

disregarded this obligation throughout his interactions with Lieberman, the Goldbergs, and *The*

*Cancer Letter.*  Therefore, the imposition of sanctions against Donahue is appropriate.

First, as the United States District Court for the District of Columbia held, the subpoenas

at issue here are "facially invalid" since they were not issued from that court.  Further, as

Donahue admits, the Goldbergs were not properly served.  As a court in the Seventh Circuit

observed: "When a subpoena should not have been issued, literally everything done in response

to it constitutes 'undue burden or expense' within the meaning of Civil Rule 45(c)(1)."  *Builders*

*Ass'n of Greater Chicago v. City of Chicago*, Case No. 96 C 1122, 2002 WL 1008455,  at *4

(N.D. Ill. May 13, 2002).  There can be little dispute then that the subpoenas here imposed an

undue burden on Goldberg.  *See also Cincinnati Ins. Co. v. Cochran*, 198 Fed. Appx. 831, 832

(11th Cir. 2006) (same) and *Molefi v. Oppenheimer Trust*, Case No. 03 CV 5631 (FB) (VVP),

2007 U.S. Dist. LEXIS 10554, (E.D. N.Y. February 15, 2007) (same).

Second, this lawsuit was only filed on July 30, 2007.  Because the lawsuit was filed

against the government, the answer was not due for 45 days.  Pursuant to Fed. R. Civ. P. 26(d),

Plaintiff was barred from taking discovery until after the Fed. R. Civ. P. 26(f) conference was

held.  Yet, Plaintiff faxed the subpoenas at issue here just three days after filing this action.

Thus, the Court concludes that because of Donahue's unreasonable conduct, Goldberg

was forced to incur expenses in responding and corresponding with regard to these invalid

subpoenas.  Moreover, Donahue was informed on several occasions as to the invalidity of the

subpoenas, but failed to correct them.  Indeed, Lieberman specifically informed Donahue that his

behavior was sanctionable and that if Donahue failed to cease his unreasonable behavior

Goldberg would seek sanctions under Fed. R. Civ. P. 45(c)(1)–which he has done here.

Moreover, it is clear that at least some of Donahue's behavior was meant to harass.

Donahue admits this on his website where he posts his comments about the Goldbergs (that they

"left town to avoid service" of the subpoenas and that their daughter lied about them hiding),

stating that this litigation "is going to be expensive and needs to be funded" and his hope that

some "excitement may encourage people to put some money up."

This Court has no hesitation concluding that Donahue's conduct is sanctionable under

Fed. R. Civ. P. 45(c)(1).  The only issue is the amount of the sanctions.  Goldberg contends that

his expenses totaled $12,2000.  However, Goldberg failed to itemize in any way the costs.

Courts imposing a sanction of attorneys' fees under Rule 45(c)(1) have often granted

sanctions equaling most if not all of the attorneys' fees sought.  *See, e.g., Am. Int'l Life Assur.*

*Co. v. Vasquez*, Case No. 02 Civ. 141 (HB), 2003 WL 548736, at *3 (S.D.N.Y. Feb. 25, 2003)

(concluding that a sanction in the amount of $ 4,436.00, representing "much of" the subpoenaed

individual's fees and costs, was appropriate where the subpoena was improperly issued and the

issuing party refused to withdraw it); *Liberty Mutual Ins. Co. v. Diamante*, 194 F.R.D. 20, 23 (D.

Mass. 2000 (same); *Batture Fleet, Inc. v. Browner*, Case No. 00 Civ. 205, 2000 WL 748093, at

*2 (E.D. La. Jan. 8, 2000) (same).

In determining the reasonable hourly rate for attorneys' services, district courts should

look to the prevailing market rates "for comparable attorneys of comparable skill and standing in

the pertinent legal community."  *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 172 (2d Cir. 1998).

Where as here, no information is provided concerning the itemization of the attorneys' fees, it is

appropriate to reduce the amount of a fee award sought.  *See, e.g., S.W. ex rel. N.W. v. Bd. of*

*Educ. of the City of New York (Dist. Two)*, 257 F. Supp.2d 600, 607-08 (S.D.N.Y. 2003);

*General Motors Corp. v. Villa Marin Chevrolet, Inc.*, 240 F. Supp.2d 182, 188 (E.D.N.Y. 2002).

Accordingly, the sanction imposed here is reduced from the amount sought by Goldberg to

$ 6000.00.

## IV.  Conclusion

Based on the foregoing, the Court **GRANTS IN PART and DENIES IN PART**

Goldberg's Motion for Sanctions.  (Doc. # 66.)  Specifically, Goldberg is awarded $ 6000.00

from Plaintiff and a judgment against Plaintiff is entered in that amount.

   **IT IS SO ORDERED.**


                              **/s/ Gregory L. Frost**
                              **GREGORY L. FROST**
                              **UNITED STATES DISTRICT JUDGE**